FILED
2021 SEP 10 PM 3:18
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| KENNETH M., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br><br> Case No. 1:20-cv-00045-DAO <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Kenneth M.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–85. (*See* Pl.'s Opening Br. 1, Doc. No. 20.) The Administrative Law Judge ("ALJ") determined Mr. M. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 21, Doc. Nos. 16–17.) After careful review of the entire record and the parties' briefs,[2] the court[3] REVERSES and REMANDS the Commissioner's decision and REMANDS the case for further consideration. This decision is based on the ALJ's apparent lack of analysis regarding listing 11.02 under step three of the sequential analysis.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by his first name and last initial only.

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the appeal will be determined on the basis of the written memoranda, as oral argument is unnecessary.

[3] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 12.)

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner of the Social Security Administration. This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence. 42 U.S.C. § 405(g). The substantial evidence standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Rather than mechanically accepting the ALJ's findings, the court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). The ALJ must provide a sufficient statement of the case and discussion of the evidence to enable the court to assess the conclusions reached. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

In addition, the court reviews whether the ALJ applied the correct legal standards. The court may reverse where the ALJ fails to do so. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) ("[T]he failure to apply proper legal standards may, under the appropriate

circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis."); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."). Grounds for reversal also arise where the ALJ fails "to provide this court with a sufficient basis to determine that appropriate legal principals have been followed." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;
2) The claimant has a medically severe physical or mental impairment;
3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

    4) The claimant possesses a residual functional capacity to perform his or her past work; and

    5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing a disability preventing him or her from engaging in prior work activity. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

## PROCEDURAL HISTORY

Mr. M. applied for disability insurance benefits and supplemental security income on July 21, 2016, alleging disability beginning May 17, 2016, due to epileptic seizures, back problems, and a learning disability. (Tr. 20, 71–72, 227–28, 229–37.) Mr. M.'s claims were initially denied on November 30, 2016, and on reconsideration on April 19, 2017. (*Id.* at 20, 145–50, 152–57.) After an administrative hearing on February 13, 2019, (*id.* at 40–70), the ALJ issued an unfavorable decision on April 1, 2019, concluding Mr. M. was not disabled, (*id.* at 20–33). At step two of the sequential evaluation, the ALJ found Mr. M. had the severe impairments of degenerative disc disease, anxiety, depression, and epilepsy. (*Id.* at 23.) At step three, the ALJ found Mr. M.'s impairments did not meet or medically equal a disability listing, specifically considering Mr. M.'s degenerative disc disease under listing 1.04, his epilepsy under listing 11.02, and his mental impairments under listings 12.04 and 12.06, (*see* 20 C.F.R. pt. 404, subpt. P, App. 1, §§ 1.00, 11.00, 12.00). (Tr. 23–25.) At step four, the ALJ found Mr. M. was able to

perform "light work" subject to certain limitations, but was unable to perform any past relevant work. (*Id.* at 25, 29–31.) At step five, the ALJ found Mr. M. could perform other jobs existing in significant numbers in the national economy given his age, education, work experience, and residual functional capacity. (*Id.* at 32.) Therefore, the ALJ concluded Mr. M. was not disabled. (*Id.* at 33.)

Mr. M. appealed the ALJ's decision to the Appeals Council, which denied review, (*id.* at 1–4), making the ALJ's decision final for purposes of judicial review.

## ANALYSIS

Mr. M. raises two issues on appeal. First, he argues the ALJ's analysis of listing 11.02, relating to Mr. M.'s epilepsy, was so perfunctory as to be erroneous. (Pl.'s Opening Br. 1, 10, Doc. No. 20.) Mr. M. contends a complete analysis shows he meets the requirement for presumptive disability. (*Id.*) Second, Mr. M. finds fault in the ALJ's justification for giving the opinion of Mr. M.'s treating physician, Dr. James, little weight. (*Id.* at 1, 13.)

1. <u>The ALJ Failed to Adequately Explain His Determination Under Listing 11.02 in Light of the Medical Evidence.</u>

The listings at 20 C.F.R. Part 404, Subpart P, Appendix 1, cover medical conditions so debilitating as to warrant an automatic presumption of disability without further consideration of the claimant's residual functional capacity or ability to perform past or other work. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). At step three, a claimant has the "burden to present evidence establishing [his or] her impairments meet or equal listed impairments[.]" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, a claimant must establish his or her impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. "To show that an impairment or combination of impairments meets the

5

requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085; *see also* 20 C.F.R. §§ 404.1525, 416.925. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531; *see also* 20 C.F.R. § 416.926(a) (addressing medical equivalence to listings).

If the evidence implicates a specific listing, the ALJ is required to evaluate whether the claimant's condition meets or equals that listing. *See Clifton*, 79 F.3d at 1009. The ALJ must do more than merely state "a summary conclusion that [the plaintiff's] impairment did not meet or equal any Listed Impairment." *Id.* The analysis must enable the court to assess whether the relevant evidence adequately supports the conclusion that the plaintiff's conditions do not meeting any listed impairment—and whether the ALJ applied the correct legal standards. *Id.* In other words, in its analysis at step three, the ALJ must "discuss the evidence and explain why he found that [the plaintiff] was not disabled." *Id.*

In this case, the ALJ found Mr. M. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 23.) The ALJ discussed listing 1.04, covering disorders of the spine; listings 12.04 and 12.06, covering mental impairments; and listing 11.02, covering seizure disorders. (*Id.* at 23–24.) Mr. M. specifically challenges the ALJ's analysis and conclusions under listing 11.02.

Listing 11.02 requires proof of either (1) generalized tonic-clonic seizures at least once per month for at least three consecutive months, or (2) generalized tonic-clonic seizures at least

once every two months for at least four consecutive months with a marked limitation in physical functioning; understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting and managing oneself. 20 C.F.R. pt. 404, subpt. P, App. 1, § 11.02(A), (C). In both categories, the seizures must occur "despite adherence to prescribed treatment." *Id.* The ALJ's only findings with regard to this listing were that (1) Mr. M.'s "epilepsy does not meet durational requirements [of occurrence] despite adherence to his medication regimen" and (2) Mr. M. "does not have a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace, or adapting or managing" himself. (Tr. 23.)

Mr. M. contends this finding was erroneous because it reflects no analysis of the medical evidence against the backdrop of listing 11.02's requirements. (Pl.'s Opening Br. 10–11, Doc. No. 20.) According to Mr. M., if the ALJ had correctly analyzed the medical evidence, it would have been clear Mr. M.'s seizure disorder meets the durational frequency requirements of the listing because Mr. M. had qualifying, documented seizures in August, September, October, November, and December 2018.[4] (*Id.* at 11.) These occurred despite Mr. M.'s adherence to medical treatment. (*Id.*) The Commissioner notes that Mr. M.'s records show potentially qualifying seizures in April and July 2018, with a self-reported similar seizure in June 2018. (Def.'s Answer Br. 10, Doc. No. 25.) And the Commissioner acknowledges Mr. M. sought

---

[4] Because Mr. M. raises no claim regarding mental or physical limitations caused by his seizures, the Commissioner limits her argument to the requirements in § 11.02(A): "Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment," (20 C.F.R. part 404, subpart P, App. 1, § 11.02(A)). (*See* Def.'s Answer Br. 9, Doc. No. 25.)

7

emergent treatment for seizures in October 2018, December 2018, and January 2019—but contends this does not meet the frequency requirement of listing 11.02. (*Id.*)

There appears to be no question as to Mr. M.'s adherence to prescribed treatment. In finding Mr. M.'s epilepsy did not meet the durational requirements of the listing, the ALJ recognized Mr. M.'s "adherence to his medication regimen." (Tr. 23.) The question, then, is whether the ALJ properly analyzed the listing in light of the medical records and explained his reasoning for accepting or rejecting evidence relevant to the listing. The answer is no. The ALJ's finding does nothing more than restate the language of listing 11.02, with no apparent analysis of the evidence in the record. Because the ALJ's finding regarding the frequency requirements of listing 11.02 is so conclusory, it is impossible to know what medical evidence the ALJ accepted or rejected, or why. Indeed, the lack of justification for this finding on the face of the record could indicate the ALJ entirely neglected to evaluate the medical evidence against the backdrop of the listing's requirements. Whether the ALJ's decision on this point reflects a lack of analysis or simply a lack of explanation, it is erroneous because it makes effective review impossible. *See Clifton*, 79 F.3d at 1009.

In her brief, the Commissioner supplies post-hoc justification for the ALJ's decision. For instance, the Commissioner points out that in April 2018, medical records confirmed generalized tonic-clonic seizures based on Mr. M.'s self-report, but the frequency of those seizures was not identified. (Def.'s Answer Br. 9, Doc. No. 25 (citing Tr. 532).) Similarly, the Commissioner points to a letter by Dr. James, written on September 26, 2019, noting that Mr. M. had three to four seizures since July 5, 2017. (*Id.* (citing Tr. 551).) But as the Commissioner notes, this letter did not indicate the seizures were tonic-clonic. (*Id.*) The problem with the Commissioner's argument arises with regard to medical records from Fall 2018. The Commissioner argues Mr.

M.'s seizure disorder did not meet the frequency requirements of listing 11.02 during this timeframe because Mr. M. sought emergent treatment for seizures in October 2018, December 2018, and January 2019—which does not show tonic-clonic seizures at least once per month for three consecutive months. (*Id.* at 10 (citing Tr. 569, 574, 671).) But this overlooks medical evidence in the record showing Mr. M. also sought emergent treatment for a seizure in November 2018, during which he reportedly turned gray, shook, and curled tightly into a ball. (*See* Tr. 569.)

The ALJ's failure to discuss these records under the requirements of listing 11.02(A) is not harmless, as his analysis does not otherwise contain sufficient findings on this point to permit meaningful review. *Cf. Fischer-Ross v. Barnhart*, 431 F.3d 729, 732–33 (10th Cir. 2005) (finding an ALJ's failure to explain why a plaintiff's impairments do not meet a listing at step three constitutes reversible error unless the ALJ offers findings elsewhere proving a basis for the conclusion). Although the ALJ discussed Mr. M.'s seizures in some detail, (*see* Tr. 26), he did not adequately address the medical records showing their durational frequency. In particular, where the ALJ did not mention the medical records showing Mr. M. sought emergent treatment for seizures each month for at least four consecutive months (from October 2018 through January 2019), this error is not harmless. If these seizures are determined to be generalized, tonic-clonic seizures, the requirements of listing 11.02(A) would be met. The ALJ's failure to discuss these records under the requirements of listing 11.02(A) makes it impossible to assess whether the relevant evidence adequately supports his conclusion. And it leaves the court unable to effectively review the ALJ's decision under step three of the sequential evaluation.

2. <u>The ALJ's Justification for Giving the Treating Physician's Opinion Little Weight May Be Moot.</u>

Mr. M. also argues the ALJ's residual functional capacity (RFC) determination is unsupported by substantial evidence because the ALJ improperly discounted the opinion of Mr. M.'s treating physician, Dr. James. (Opening Br. 12–13.) Specifically, Mr. M. contends the ALJ's justification for giving Dr. James's opinion "little weight" was flawed because the ALJ failed to link his determination to relevant evidence or to explain his rationale. (*Id.* at 13–14.) The Commissioner argues the ALJ's stated reasons for giving Dr. James's opinion little weight were legitimate, and substantial evidence supports the RFC determination. (Def.'s Answer Br. 12–13.)

Where the ALJ failed to properly evaluate (or, at least, to explain his evaluation of) listing 11.02, and the court is reversing on those grounds, the court need not address this issue. If the ALJ's findings as to step three of the sequential evaluation changes on remand, there may be no need for consideration of Mr. M.'s RFC. *See Zebley*, 493 U.S. at 532 ("[I]f an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work."). In other words, this issue may be rendered moot by the ALJ's consideration of the case on remand.

## CONCLUSION

Where the ALJ did not sufficiently explain his reasoning for finding Mr. M. failed to satisfy the requirements of listing 11.02 in light of the record evidence, remand is necessary.

The court REVERSES the Commissioner's decision and REMANDS the case for further proceedings consistent with this order.

DATED this 10th day of September, 2021.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge